William F. GALES, Sr., Appellant,

v.

Michael William DENIS, Individually and in His Capacity as Independent Executor of the Estate of Reba B. Jones, deceased, and Ronald E.W. Denis, Appellees.

No. 01–07–01101–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 24, 2008.

■

---

Joseph A. Kral, Houston, TX, for Appellant.

Monica Schulz Orlando, Myer, Knight & Williams, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

William F. Gales, Sr., appellant, contests the trial court's order denying his special appearance. In six issues, he argues that (1) the trial court erred in finding that he filed an answer before he filed his special appearance, or, alternatively, that trial court erred in finding that the answer did not conform to Texas Rule of Civil Procedure 120a; (2) the trial court erred in finding that he had established minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities in Texas; and (3) the trial court erred in concluding that the exercise of personal jurisdiction over him was consistent with traditional notions of fair play and substantial justice.

We affirm.

## Background

Michael William Denis, individually and in his capacity as the independent executor of the estate of Reba B. Jones, Deceased, and Ronald E.W. Denis (collectively, "the Denises"), appellees, sued appellant for his alleged involvement in the sale of a piece of property in Brazoria County, Texas that

was formerly owned by Reba Jones, a resident of Alabama.[1]

According to the Denises' Fourth Amended Original Petition, the property in question had been owned by Jones's family for more than 56 years. Jones allegedly executed a durable power of attorney in Alabama on November 20, 1997, in favor of her daughter, Barbara Gales, who was also a resident of Alabama. On March 17, 2005, Barbara Gales used this authority to execute a warranty deed transferring the Brazoria County property to her husband, Michael Gales, who was appellant's son. The deed states that Michael Gales gave ten dollars and "other valuable consideration" in exchange for the Brazoria County property. Three days later, on March 20, 2005, Reba Jones died in Alabama. Five weeks after that, the warranty deed conveying the Brazoria County property to Michael Gales was recorded in the real property records of Brazoria County.

Barbara and Michael Gales subsequently listed the Brazoria County property for sale with Texas real estate agent Yvette Reyes–Hall. Michael Denis, Barbara Gales' son from a previous marriage, contacted the realtor's licensed subagent handling the property listing to inform her that the title to the property was in question, that probate proceedings were pending, that the property should be taken off the market, and that all potential buyers should be advised of the title issues. Nevertheless, Barbara and Michael Gales entered into a contract to sell the Brazoria County property to Sable Quest, Ltd. for $1,154,415.36 on February 28, 2006. Six weeks later, while the sale was pending, Barbara Gales died in Alabama. No will was found.

On May 23, 2006, prior to the closing of the sale of the Brazoria County property, Michael Gales executed an Affidavit of Heirship in Alabama related to the family history of Barbara Gales. The affidavit appears to have been made directly to Alamo Title Company, located in the Houston area, and was filed in the property records of Brazoria County. The Denises allege that this was to "facilitate the sale of the property [and to] clear up title issues to the property." The affidavit stated, among other things, that "[Barbara Gales] was married only once and that was to [Michael Gales]. [Barbara Gales] had no children." Appellant similarly signed the following statement before a notary in Alabama: "I am also personally acquainted with the family history and facts of heirship under [Barbara Gales,] having been personally acquainted with [her] for 24 years. I have read the foregoing affidavit of [Michael Gales] and after reading the same, I find it to be true and correct." Another defendant in this suit, Charlotte Wenk, signed a similar statement. Both statements were likewise filed in the Brazoria County property records.

The Denises allege that appellant, Wenk, and Michael Gales all knew that Barbara Gales had been married four times and that the Denises were her two surviving children. They also argue that appellant and Michael Gales knew that other statements made in the affidavit were false.

Three days after appellant, Wenk, and Michael Gales executed the affidavit of heirship, the Brazoria County property

---

1. Other defendants in the underlying suit are Sable Quest, Ltd., 20 GP, L.L.C., Yvette Reyes–Hall, Michael Steven Gales, Charlotte Wenk, Andy Arnold Reyes, Reyes/Planka Realtors, Inc., and Chrysta Gales Graves in her capacity as administrator of the Estate of Michael Steven Gales. None of these defendants is a party to this interlocutory appeal; however, some of these parties are discussed further in the background as they relate to the claims against the appellant.

was sold to Sable Quest, Ltd. The closing took place in Texas on May 26, 2006 through Alamo Title Company. On July 18, 2006, Michael Denis was appointed as independent executor of the estate of Reba Jones. Michael Gales died on February 23, 2007.

The Denises brought the underlying suit,[2] alleging fraud and conspiracy to commit fraud in connection with the disposition of the Brazoria County property. Appellant was served in this suit on July 16, 2007 in Alabama. Appellant signed a letter dated July 20, 2007, and it was filed among the court documents on July 31, 2007. The letter begins with the salutation "To whom it may concern" and states,

> I, William F. Gales Sr. [Appellant], acknowledge the service of the lawsuit against me as part of the suit against Sable Quest, LTD., Yvette Reyes–Hall, Michael Gales, deceased, and Charlotte Wenk by Michael Denis on 16 July 2007.
>
> I deny the accusations against me. I have no recollection of signing an affidavit.

The letter was signed by appellant and two witnesses, and it was notarized by a notary public of the state of Alabama. The record does not contain any accompanying envelope or any indication of how the letter came to be filed with the trial court. It appears that court personnel marked the letter with the cause number.

On August 13, 2007, appellant's attorney filed a formal special appearance on behalf of appellant, and the trial court conducted a hearing on the special appearance on November 19, 2007. Appellant argued that he was not subject to personal jurisdiction in Texas because his only allegedly wrongful act was the execution of the affidavit of heirship in Alabama, which did not occur until 14 months after Barbara Gales had committed the allegedly fraudulent transfer of Jones's property to Michael Gales. The Denises countered that jurisdiction was proper because appellant purposefully availed himself of the forum when the fraudulent affidavit was filed in Brazoria County to effect the sale of the Brazoria County property and because he received a monetary benefit from the sale of the property to Sable Quest, Ltd. The Denises presented evidence that appellant was a co-owner with right of survivorship on the bank account into which Michael Gales deposited the proceeds from the land sale.

At the hearing, the trial court asked the parties about the letter signed by appellant in July 2007 and requested additional briefing on whether it constituted an answer that waived appellant's objection to jurisdiction in Texas. On November 28, 2007, the trial court issued its order denying appellant's special appearance and made the following findings of fact and conclusions of law:

1. General personal jurisdiction over [appellant] does not exist because [the Denises] did not plead sufficient facts to establish continuous and systematic contacts with Texas.

2. Specific personal jurisdiction over [appellant] exists because [the Denises] [pleaded] the following facts which were not negated by [appellant's] proof:

   a. On November 20, 1997 [Reba Jones] appointed her daughter, Barbara Gales, as agent under a durable power of attorney.

   b. On March 17, 2005 as agent under the power of attorney, Barbara Gales executed a deed in Alabama transferring

---

2. *Estate of Reba B. Jones, Deceased,* No. 364,-821–401 (Probate Court No. 4, Harris County, Tex.).

[Reba Jones's] real property located in Brazoria County, Texas (the "property"), which is the subject of this lawsuit[,] to her husband, Michael Gales.

c. On March 20, 2005, [Reba Jones] died in Alabama at age 96.

d. After [Reba Jones's] death, Michael Gales contacted a realtor in Brazoria County, Texas, and listed the property for sale.

e. On April 8, 2006, Barbara Gales died in Alabama.

f. On May 23, 2006, an Affidavit of Heirship (the "Affidavit") to facilitate closing on the property was executed in Alabama.

g. The Affidavit states that [appellant] signed the Affidavit and swore to the information contained in the Affidavit in the presence of a notary public in Alabama.

h. The Affidavit contains false information regarding Barbara Gales' marital history and children.

i. The Affidavit was filed in the real property records in Brazoria County, Texas, to assist with the closing of the sale of the property.

3. The facts listed in sections 2f through 2i above present a prima facie case that [appellant's] purposeful conduct was directed toward Texas and support [the Denises'] causes of action against [appellant] for fraud and conspiracy to commit fraud.

4. The exercise of jurisdiction over [appellant] is therefore consistent with traditional notions of fair play and substantial justice.

5. [Appellant] waived his special appearance by filing an answer before filing a special appearance, as shown by the following facts:

a. On July 16, 2007 [appellant] was personally served in Slocomb, Alabama

with [the Denises'] Third Amended Original Petition.

b. On July 31, 2007 [appellant], appearing *pro se,* filed an answer acknowledging service of [the Denises'] petition, the name of one Plaintiff and the names of most of the other defendants.

c. In [appellant's] answer, he denied any accusations against him and also denied recollection of signing an affidavit.

d. [Appellant's] answer was signed by [appellant], two witnesses and a notary public in Alabama.

6. Defendant's answer does not comply with the requirements of Texas Rule of Civil Procedure [120a] and is not a special appearance by [appellant].

### Analysis

***Standard of Review***

Special appearances are governed by Rule 120a, which provides:

[A] special appearance may be made by any party ... for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process by the courts of this State.... Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance.... Every appearance, prior to judgment, not in compliance with this rule is a general appearance.

Tex.R. Civ. P. 120a(1). Rule 120a further states, "Any motion to challenge the jurisdiction provided for herein shall be heard

and determined before a motion to transfer venue or any other plea or pleading may be heard." Tex.R. Civ. P. 120a(2).

On appeal we review de novo the trial court's determination to grant or deny a special appearance. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). We review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *N803RA, Inc. v. Hammer,* 11 S.W.3d 363, 366 (Tex.App.–Houston [1st Dist.] 2000, no pet.) (citing *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985)).

### Waiver

In his first and second issues, appellant argues that his July 2007 letter was not an answer that waived his objection to jurisdiction because it did not contain his current address. The Denises contend that appellant's July 2007 letter was an answer that waived his special appearance because it did not comply with the dictates of Texas Rule of Civil Procedure 120a, governing special appearances.

Courts have construed the term "answer" to mean a "written pleading of some character." *Guadalupe Econ. Services Corp. v. Dehoyos,* 183 S.W.3d 712, 716 (Tex.App.–Austin 2005, no pet.) (citing *Santex Roofing & Sheet Metal, Inc. v. Venture Steel, Inc.,* 737 S.W.2d 55, 56 (Tex.App.–San Antonio 1987, no writ)). The Texas Rules of Civil Procedure give the definition and general format for pleadings in district and county courts. Rule 45 states that pleadings, including answers, shall "consist of a statement in plain and concise language of ... the defendant's grounds of defense." Tex.R. Civ. P. 45(b). As to form, Rule 45 states that pleadings should "be in writing, on paper measuring approximately 8½ × 11 inches, and either the signed original together with any verification or a copy of said original and copy of any such verification shall be filed with the court." Tex.R. Civ. P. 45(d). Rule 45 also states that "[a]ll pleadings shall be construed so as to do substantial justice." Tex.R. Civ. P. 45(d). Rule 50 of the Texas Rules of Civil Procedure states, "All averments of a claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances." Tex.R. Civ. P. 50. Finally, Texas Rule of Civil Procedure 57 states, "A party not represented by an attorney shall sign his pleadings, state his address, telephone number, and, if available, his telecopier number." Tex.R. Civ. P. 57.

The Texas Supreme Court has held, however, that "a defendant, who timely files a pro se answer by a signed letter that identifies the parties, the case, and the defendant's current address, has sufficiently appeared by answer" even if the letter "was not in the 'standard form' of an answer." *Smith v. Lippmann,* 826 S.W.2d 137, 138 (Tex.1992) (citing *Terehkov v. Cruz,* 648 S.W.2d 441, 442 (Tex.App.–San Antonio 1983, no writ) and *Santex Roofing,* 737 S.W.2d at 56–57) (holding answer was sufficient to avoid default judgment). In addition, following *Lippmann,* this Court held that a pro se letter was an answer when the defendant's address was only included on the envelope the letter was mailed in and it was unclear whether the case number identification was written by the defendant or by a district clerk's office employee. *Harris v. Harris,* 850 S.W.2d 241, 242–43 (Tex.App.–Houston [1st Dist.] 1993, no writ); *see also N803RA,* 11 S.W.3d at 366 (likewise following *Lippmann* in context of waiver of special appearance).

Subsequently, the Third Court of Appeals pointed out in *Guadalupe Economic Services:*

Although the supreme court stated in *Lippmann* that a letter possessing all of the listed identifying factors was a sufficient answer, it did not address whether a letter that included some, but not all of the factors, would also be sufficient. However, the court cited *Terehkov v. Cruz* as authority for its holding. In *Terehkov*, the San Antonio court held that a *pro se* answer was sufficient even though it only contained the defendant's signature, address and an assertion that it was not liable for the plaintiff's claims. The *Lippmann* court did not limit *Terehkov* in any way. Instead, it adopted *Terehkov*'s proposition that *a signed letter sent to a clerk that acknowledged receipt of a citation was a sufficient answer.*

*Guadalupe Econ. Services,* 183 S.W.3d at 716 (internal citations omitted) (emphasis added).

■ We agree with *Lippmann* and *Guadalupe Economic Services.* Appellant's letter is similar to the letters in *Lippmann* and *Harris.* In his letter, appellant acknowledged service of the lawsuit, correctly named most of the other defendants and one of the plaintiffs, denied all accusations against him and denied signing an affidavit. He signed the letter himself and had the letter witnessed and notarized. The letter was filed with the clerk of the Harris County, Texas probate court, who acknowledged receipt by entering a cause number on the letter. Although appellant's letter did not contain his address or telephone number, as required by Texas Rule of Civil Procedure 57, the letter "nevertheless gave the court a timely response acknowledging receipt and acceptance of [the Denises'] citation and petition." *Lippmann,* 826 S.W.2d at 138. We hold that the letter contained enough of the characteristics of an answer to justify the trial court's finding that the

letter was an answer. *See Hock v. Salaices,* 982 S.W.2d 591, 594 (Tex.App.–San Antonio 1998, no pet.) (holding that determination of what constitutes an answer is, by nature, fact specific, and subject to review for abuse of discretion).

Appellant, however, argues that he did not file an answer because the letter filed with the trial court did not include his address. To support his contention, appellant cites to *Smith v. Lippmann* and other cases that have followed its reasoning and included the defendant's current mailing address as one of the elements that made a pro se letter an answer. *See Lippmann,* 826 S.W.2d at 138; *N803RA,* 11 S.W.3d at 366; *Home Sav. of Am. FSB v. Harris County Water Control & Improvement Dist. No. 70,* 928 S.W.2d 217, 218–19 (Tex. App.–Houston [14th Dist.] 1996, no writ); *Harris,* 850 S.W.2d at 242–43.

In particular, appellant cites *N803RA* to support his allegations that his letter did not waive his objection to jurisdiction. In *N803RA,* this Court held that the defendant did not waive a subsequently filed formal special appearance because his previously filed letter expressed an objection to jurisdiction and was *both* an answer and a special appearance. *N803RA,* 11 S.W.3d at 366–67. Here, however, appellant's letter made no similar reference to jurisdictional concerns.

We hold that appellant waived his special appearance because the July letter constituted an answer and it did not comply with the requirements of Texas Rule of Civil Procedure 120a because appellant did not argue in any way that he was not amenable to service of process by the courts of this State. *See* Tex.R. Civ. P. 120a.

We overrule appellant's first and second issues.

Even if appellant had not waived his special appearance, however, we would still find that he had sufficient minimum contacts with this state in connection with the transactions that are the subject of the underlying suit to justify the trial court's exercise of jurisdiction over him.

### Specific Jurisdiction

In his third, fourth, fifth and sixth issues, appellant argues that the trial court erroneously concluded that he had established minimum contacts with Texas and that the exercise of jurisdiction over him was consistent with traditional notions of fair play and substantial justice.

■ Whether a court has personal jurisdiction over a defendant is a question of law subject to de novo review. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex.App.–Houston [1st Dist.] 2005, no pet.). The trial court, however, must frequently resolve questions of fact before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794. When the trial court issues findings of fact and conclusions of law, we may review the findings of fact on legal and factual sufficiency grounds and review the conclusions of law de novo as a legal question. *Silbaugh v. Ramirez*, 126 S.W.3d 88, 94 (Tex.App.–Houston [1st Dist.] 2002, no pet.) (citing *BMC Software*, 83 S.W.3d at 794).

The legal and factual sufficiency of the evidence to support a trial court's findings of fact is reviewable by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence which supports jury findings. *Vannerson v. Vannerson*, 857 S.W.2d 659, 667 (Tex.App–Houston [1st Dist.] 1993, writ denied). We

may set aside a finding of fact only if the evidence at the trial court level would not enable a reasonable and fair minded finder of fact to make the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). To the extent that the underlying facts are undisputed, however, we conduct a de novo review of the conclusions of law. *Glattly*, 177 S.W.3d at 445.

■ Two requirements must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant. First, the Texas long-arm statute must authorize the exercise of jurisdiction, and second, the exercise of jurisdiction must be consistent with the guarantees of due process. *Coleman*, 83 S.W.3d at 806; *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex.App.–Houston [1st Dist.] 2005, no pet.).

■ The long-arm statute permits Texas courts to exercise personal jurisdiction over a nonresident[3] defendant that "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997); *see PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex.2007). The statute lists three activities that constitute "doing business": (1) contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents for employment inside or outside of Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. This list is not exclusive,[4] however, and the statute's "doing business" requirement is limited only by the requirements of federal due process. *Koll Real Estate Group, Inc. v. Purseley*, 127 S.W.3d 142, 146 (Tex.App.–Houston [1st Dist.]

---

**3.** A "nonresident" includes "an individual who is not a resident of [Texas]." TEX. CIV. PRAC. & REM.CODE ANN. § 17.041 (Vernon 1997).

**4.** *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002).

2003, no pet.) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)).

■ Because the language of the long-arm statute is broad, the requirements are considered satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). In practice, the two conditions are combined into one requirement of due process. *v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 247 (Tex. App.–Houston [1st Dist.] 2004, pet. denied). Thus, the true determinative inquiry is one of federal constitutional due process. *See id.; see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

■ With respect to personal jurisdiction, federal due process requires two things. First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there. *Glattly*, 177 S.W.3d at 446 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). Second, if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* at 447 (citing *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84). As to fairness, the defendant bears the burden of presenting a "compelling case" that exercising jurisdiction over him would not be fair or just. *See id.* at 450. Only in rare cases, however, will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch. Assurance*, 815 S.W.2d at 231.

■ A nonresident establishes minimum contacts with Texas by purposefully availing itself of the privileges and benefits inherent in conducting business in the state. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005); *Koll*, 127 S.W.3d at 146. The touchstone of jurisdictional due process is "purposeful availment," or, in other words, "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana*, 168 S.W.3d at 784 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)) (emphasis in *Michiana* ).

■ Minimum contacts may give rise to either general or specific jurisdiction. *Glattly*, 177 S.W.3d at 447. The parties do not argue that the trial court had general jurisdiction over appellant, and the trial court made a finding that it did not have general jurisdiction in this case. Therefore, we only analyze whether the trial court had specific personal jurisdiction over appellant. To satisfy the minimum contacts element of due process in establishing specific personal jurisdiction, a court may exercise jurisdiction over a nonresident defendant only if his alleged liability arises from, or is related to, an activity conducted within the forum. *Id.* (citing *CSR*, 925 S.W.2d at 595). The contacts must be purposefully directed at the forum and have a "substantial connection" to the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576, 585 (Tex.2007); *Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 837 (Tex.App.–Houston [1st Dist.] 2002, pet. denied). We focus our analysis on the relationship among the defendant, the fo-

rum, and the litigation. *Shell Compania Argentina*, 84 S.W.3d at 836–37.

■ Here, the underlying facts are essentially undisputed. The Denises filed this lawsuit to resolve claims that Reba Jones's estate and individual heirs were deprived of assets by the allegedly fraudulent conveyance of the Brazoria County property. The Denises specifically allege that appellant committed the torts of fraud and civil conspiracy and received a monetary benefit from the sale of the Brazoria County property. The trial court found that appellant swore to the affidavit containing facts that he knew to be false and that the affidavit was filed in the Brazoria County property records to assist with the closing of the sale of the property in Texas. The Denises' evidence showed that appellant received a monetary benefit from this sale.

We agree that appellant purposefully availed himself of the forum when he executed the affidavit of heirship for filing in the Texas property records in connection with the sale of the Brazoria County property in Texas and that his affidavit was related to the litigation in this case. As the Denises stated in their response to the special appearance and in their brief, "But for the filing of [appellant's] affidavit, the transfer of property resulting in injury to [Jones'] estate would not have occurred." Appellant argues that the affidavit was not executed until 14 months after Barbara Gales transferred Jones' property to Michael Gales, and, thus, the estate had already been deprived of the property at the time he executed the affidavit. However, the second transaction between Michael Gales and Sable Quest, Ltd. was an integral part of the events that removed a valuable asset from Jones's estate. *See Michiana*, 168 S.W.3d at 785 (requiring that contacts must be defendant's own "purposeful" contacts). Furthermore, the

Denises presented evidence that appellant received a monetary benefit from this sale of Brazoria County property, including bank records showing that appellant was a joint owner with right of survivorship on the bank account where Michael Gales deposited the proceeds from the land's sale. *See id.* (requiring that defendant must seek some benefit or profit by availing himself of the jurisdiction).

The operative facts of the litigation involve the two transactions that operated to deprive Reba Jones's estate of the property in Brazoria County, and appellant was involved in the second transaction through his signature on the affidavit filed in the Brazoria County property records. Appellant argues that he was not aware the affidavit would be filed in Texas. However, the record demonstrates that the affidavit itself bears a description of the Brazoria County property, and it appears on its face to have been made directly to Alamo Title Company. Thus, the trial court could have reasonably concluded that appellant knew or should have known that the document related to the sale of a piece of property in Texas. *See City of Keller*, 168 S.W.3d at 827 (holding that appellate court may set aside fact-finding only if evidence would not allow reasonable fact finder to make finding under review); *see also Glattly*, 177 S.W.3d at 446–47 (holding that foreseeability is an important, but not determinative, consideration in deciding whether a nonresident defendant has purposefully established minimum contacts). We hold that appellant purposefully established minimum contacts with Texas. *See Michiana*, 168 S.W.3d at 784.

■ When an appellant has purposefully established minimum contacts with Texas, we will only hold that the exercise of specific personal jurisdiction over him violates traditional notions of fair play and substantial justice if we determine that

rare circumstances merit such a holding. *Guardian Royal Exch. Assurance,* 815 S.W.2d at 231. Here, appellant has not presented any evidence that the trial court's exercise of jurisdiction over him is unfair or unjust. Appellant has failed to meet his burden of presenting a "compelling case" that exercising jurisdiction over him would not be fair or just. *See Glattly,* 177 S.W.3d at 450.

We overrule appellant's third, fourth, fifth, and sixth issues.

## Conclusion

We affirm the order of the trial court that denied appellant's special appearance.